GERALD WOLFE (SBN 180599)
LAW OFFICE OF GERALD WOLFE
19600 FAIRCHILD ROAD, SUITE 295
IRVINE, CALIFORNIA 92612
TELEPHONE (949) 257-0961
FACSIMILE (949) 878-4840

ATTORNEY FOR ALLEGED DEBTOR
STEVEN SEARS

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF CALIFORNIA – SANTA ANA DIVISION

| | |
|---|---|
| IN RE:<br><br>STEVEN SEARS<br><br>      Debtor, | CASE NO. 8:11-12525 MW<br><br>CHAPTER: 11<br>JUDGE: MARK S. WALLACE<br><br>NOTICE OF MOTION AND MOTION TO DISMISS INVOLUNTARY CHAPTER 11 BANKRUPTCY PETITION; MEMORANDUM OF POINTS AND AUTHORITIES, DECLARATIONS IN SUPPORT THEREOF; DECLARATION OF STEVEN SEARS; DECLARATION OF YVONNE TRAN; DECLARATION OF GLADYS BAZAN; AND DECLARATION OF GLORIA LEE<br><br>DATE: April 20, 2011<br>TIME: 1:30 PM<br>COURTROOM: 6C |

**TO: THE HONORABLE MARK S. WALLACE, UNITED STATES BANKRUPTCY JUDGE, NEVINE CARMELLE, WILLIAM C BEHRNDT, AND B ROBERT FARZAD AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that on April 20, 2011 at 1:30 PM in Courtroom 6C, of the U.S. Bankruptcy Court located at 411 W. Fourth Street, Santa Ana, CA 92701, Alleged Debtor Steven Sears ("Alleged Debtor") will bring on for hearing his "Motion to Dismiss Involuntary

Chapter 11 Bankruptcy Petition (the "Motion").  By Motion, the Alleged Debtor will ask that the Court dismiss the involuntary Chapter 11 bankruptcy petition filed against him on February 24, 2011, on grounds that (a) a bona fide dispute exists and (b) Alleged Debtor is paying debts as they become due under 11 U.S.C. § 303.  Alternatively, the Alleged Debtor will seek the court to suspend or dismiss the current involuntary petition under 11 U.S.C. § 305.

This Motion is based upon this notice, the attached memorandum of points and authorities, and Declaration of Steven Sears; Declaration of Yvonne Tran; Declaration of Gladys Bazan and Declaration of Gloria Lee as well as the records and files in this action, and such other evidence as may be presented at the hearing on this matter.

*Pursuant to the Scheduling Order filed and entered on March 22, 2011 by the Court, any Opposition to this Motion must be filed and served on Alleged Debtors and Alleged Debtors' counsel by April 11, 2011.  Failure to file and serve a timely response to this Motion may result in a waiver of your right to oppose the Motion and the court may grant the requested relief without further notice to you.*

DATE: March 28, 2011

                                            /s/ Gerald Wolfe
                                       GERALD WOLFE
                                       Attorney for Alleged Debtor
                                       Steven Sears

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.    INTRODUCTION**

 **A.    Facts**

  Alleged Debtor Steven Sears ("Alleged Debtor") was a Defendant and Respondent in a certain family law matter in the Orange County Superior Court ("State Court") entitled *Nevine Carmelle v. Steven Sears*, Case No. 06P000642 ("Family Law Action"). At issue in the Family Law Action was the income of Alleged Debtor, child support obligation for each children, and attorneys' fees and costs requested by Nevine Carmelle.

  The Petitioning Creditors are Nevine Carmelle, William C Behrndt of Baron & Behrndt, LLP, and B Robert Farzad of Farzad & Mazarei, ALC (hereinafter "Petitioning Creditors"). Nevine Carmelle was the Plaintiff and Petitioner ("Petitioner") in the Family Law Action while William C Behrndt ("Behrndt") and B Robert Farzad ("Farzad") were the Attorneys for the Petitioner.

  According to the Statement of Decision issued in the Family Law Action on October 11, 2008, the Court granted evidentiary sanctions against Alleged Debtor and barred Alleged Debtor from: (i) offering any evidence of any kind on the issue of income, finances and other financial dealings, and (ii) opposing any and all evidence regarding the Alleged Debtor's income, finances and other financial dealings as they were introduced by Petitioner in the Family Law Action. The evidentiary sanctions were enforceable in the three other related family law matters entitled *Steven Sears v. Gladys Bazan* Case No. 07P001073, *Steven Sears v. Yvonne Tran* Case No. 07P001074, and *Steven Sears v. Gloria Lee* Case No. 07P001075 ("Related Family Law Matters"). A copy of the Statement of Decision is attached as Exhibit "1" to the Declaration of Steven Sears.

  Due to evidentiary sanctions issued against Alleged Debtor, there was no evidence to support that Alleged Debtor made $522,573 per month and Alleged Debtor did not have the chance to cross-examine Petitioner's experts. The only evidence before the State Court was evidence offered by Petitioner's experts, who failed to take into account business expenses in calculating Alleged Debtor's income. The experts for Yvonne Tran, Gloria Lee and Gladys

Bazan (collectively "Substantial Claim Holders") testified in the Related Family Law Matters that they could not substantiate the evidence offered by Petitioner.  Substantial Claim Holders also have family law child support judgments against the Alleged Debtor as more fully described below and in the Declarations of the Substantial Claim Holders.

Alleged Debtor currently makes $3,000 monthly instead of the $522,573 amount as found in the Family Law Action.  His wages are subject to a wage garnishment to satisfy his child support obligation.

On March 5, 2010, the State Court issued a Judgment in the Family Law Action ("Judgment") whereby the Court ordered Alleged Debtor to pay: (i) child support of $15,000 per month based on a monthly income of $522,573 and (ii) attorneys fees to Baron & Behrndt, LLP (one of the Petitioning Creditors in this case) of $40,000.  A copy of the Judgment is attached as Exhibit "2" to the Declaration of Steven Sears.

To date, Yvonne Tran holds a judgment against Alleged Debtor in the amount of approximately $1,400,000; Gladys Bazan holds a judgment against Alleged Debtor in the amount of approximately $1,400,000; and Gloria Lee holds a judgment against Alleged Debtor in the amount of approximately $700,000.  See, Declarations of the Yvonne Tran, Gladys Bazan and Gloria Lee.  On the other hand, Petitioner holds a judgment against Alleged Debtor in the amount of approximately $708,258 according to the involuntary petition filed against Alleged Debtor, which comprises 1/6 of the Alleged Debtor's total debt.  Although the Alleged Debtor has other unsecured obligations, the total of all remaining unsecured debt is less than $100,000.

On March 15, 2010, Jan Mark Dudman, who has been attorney of record in the Family Law Action for Alleged Debtor at all relevant times, filed a Motion for New Trial regarding the Family Law Matter, requesting among other things, that a new trial be granted and that the Court vacate the Judgment that was entered on March 5, 2010.  The grounds for the requests included, but were not limited to, (i) evidentiary sanctions that were improperly issued (ii) Alleged Debtor was compelled to stipulate to the evidentiary sanctions in the Family Law Action as well as the Related Family Law Matters, (iii) Alleged Debtor was not allowed to cross-examine the expert testimony of Alleged Debtor's income, (iv) and the insufficiency of evidence to justify the

Court's decision on income of Steven Sears and child support obligation for each of the Alleged Debtor's eight children, and (v) and attorneys' fees and costs. A Copy of the Motion for New Trial is attached as Exhibit "3" to the Declaration of Steven Sears.

The Motion For a New Trial was denied and the Order on the Denial was filed on July 20, 2011. A Notice of Filing of Notice of Appeal was filed on June 8, 2010 and June 9, 2010, entitled *Nevine Carmelle v. Steven Sears*, Case No. G043765 in the Court of Appeal, Fourth Appellate District ("Appellate Court"). However, on July 28, 2010, the Appellate Court dismissed both Appellate Actions, which were dismissed for minor procedural defects.

On August 20, 2010, Alleged Debtor filed a third Notice of Filing of Notice of Appeal entitled *Nevine Carmelle v. Steven Sears*, Case No. G044104 in the Appellate Court ("Pending Appellate Matter") which was timely filed. The Pending Appellate Matter was filed prior to the commencement of this involuntary Chapter 11 case and it is currently pending in Appellate Court. Appellant's opening brief is due on May 31, 2011. A copy of the Notice of Filing of Notice of Appeal is attached as Exhibit "4" to the Declaration of Steven Sears.

### B. The Involuntary Chapter 11 Case

On February 24, 2011, Petitioning Creditors filed the instant involuntary petition against the Alleged Debtor. The legal issues presented in the involuntary petition are whether: (i) the claims of the Petitioning Creditors are subject to a bona fide dispute, and (ii) Alleged Debtor is not generally paying his debts as they become due, which are necessary under 11 U.S.C. § 303 for an involuntary petition as well as abstention issues under 11 U.S.C. § 305.

## II. THE COURT SHOULD DISMISS THE INVOLUNTARY CHAPTER 11 BANKRUPTCY PETITION.

### A. Failure to State A Claim for Relief

#### 1. Standard For Motion To Dismiss

Rule 12(b)(6) permits the Court to dismiss an action for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). The motion to dismiss may be granted only if the non-movant can demonstrate any set of facts in support of the claim that would entitle

the non-movant to relief. See <u>Conley v. Gibson</u>, 355 U.S. 41, 45-46, 2 L.Ed. 2d 80, 78 S. Ct. 99; <u>Williams v. New Castle County</u>, 970 F.2d 1260, 1266 (3d Cir. 1992). If it is beyond doubt that plaintiff cannot prove facts that would entitle him to relief, the Court should grant the Motion. <u>Johnson v. Knowles</u>, 113 F.3d 1114, 1117 (9th Cir. 1997). The Court is not required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences. <u>Clegg v. Cult Awareness Network</u>, 18 F.3d 752, 54-55 (9th Cir. 1994).

**B.    Failure to Satisfy Elements of Involuntary Petition Elements Under 11 U.S.C. § 303 (b)**

**1.    Elements of 11 U.S.C. § 303 (b)**

To obtain order for relief on an involuntary Chapter 11 bankruptcy petition under 11 U.S.C. § 303, petitioning creditors must establish by a preponderance of the evidence that (1) three or more them, (2) held claims against Alleged Debtor that were not contingent as to liability and (3) were not subject to a bona fide dispute as to liability or amount (4) aggregate amount of at least $13,475 and (5) that Alleged Debtor was generally not paying his debts as these debts become due. 11 U.S.C. § 303(b), (h). It is undisputed that the three Petitioning Creditors hold non-contingent claims against Alleged Debtor in the aggregate amount in excess of $13,475. At issue are whether the claims are subject to a bona fide dispute as to liability or amount or whether Alleged Debtor was paying his debts as his debts became due.

<u>In Re Georges Marciano</u> 2:09-BK-39630-VK, 2010 WL 5644911 (Bankr. C.D. Cal. Dec. 28, 2010) is a recent Ninth Circuit case which discusses the elements of involuntary bankruptcy under 11 U.S.C. § 303 (b), (h) in detail.

Georges Marciano, the alleged debtor ("Marciano") filed a Complaint in the Los Angeles Superior Court ("Superior Court") against his former employees Joseph Fahs, Steven Chapnick, Miriam Choi, Elizabeth Tagle and Camille Abat ("Marciano Defendants"), alleging among other things, massive theft, misappropriation, conversion of Marciano's personal and business property, asset and money, including theft of his fine arts. In response the Marciano Defendants filed a cross-complaint against Marciano alleging among other things, defamation and intentional infliction of emotional distress.

The Superior Court issued a judgment for the Defendants against Marciano for $95.3 million and terminating and discovery sanctions against Marciano for his willful abuse of the discovery process.

Marciano's misuse of the discovery process included but were not limited to: (i) avoiding, ignoring, requesting continuances, and not showing up to numerous deposition requests by Defendants' counsels; (ii) substituting counsel at least fifteen times whereby new counsel requested additional time to prepare for Marciano's deposition, causing "substantial burden, delay, confusion and expense to the Court and all parties"; (iii) serving no objections to the deposition requests until the last minute and then faxing in a request for a Motion for Protective Order, effectively stalling the deposition, which the Court denied and sanctioned Marciano $6,750; (iv) faxing in a request for "Demand for a Certified French Interpreter and Objections to Amended Notice of Deposition of Plaintiff Georges Marciano" moments before the scheduled deposition; and (v) taking the position that Marciano did not need to submit to deposition until he had completed discovery to his own level of satisfaction. In re Marciano, *supra*.

On December 19, 2008, some of the Defendants filed a motion seeking to strike Marciano's answers to the cross-complaints of Choi and Abat and requested that Marciano appear for a deposition on January 6, 2009. This Motion was based on Marciano's failure to appear at a scheduled deposition on December 15, 2008 and Marciano's last minute demand on December 12, 2008 for a certified French interpreter.

On January 5, 2009, the Superior Court ordered Marciano to appear for a deposition on January 6, 2009 but Marciano objected on the basis that he was too sick and asked for a continuance. Although the Judge was sympathetic, he denied Marciano's request. Marciano did not appear at the January 6 deposition due to a respiratory condition. The Superior Court rescheduled Marciano's deposition to January 12 and January 23. Again, Marciano failed to appear to the deposition alleging his deteriorating health and admittance to the hospital.

Due to Marciano's blatant attempts to avoid his depositions, on January 16, 2009, Chapnick filed a motion to strike Marciano's answer and to bar him from defending against the

Case 8:11-bk-12525-MW    Doc 9    Filed 03/28/11    Entered 03/28/11 23:51:15    Desc
Main Document    Page 8 of 17

cross-complaint. The Superior Court granted the motion. In the Court's Minute Order, it stated: "the court has inherent power to strike defendant's answer and enter its default for a defendant's misconduct in the *extreme situations….*" In re Marciano, *supra*. [Emphasis Added]

On May 15 and 18, 2009, there was a default prove up trial in Superior Court. The Superior Court found Marciano liable for defamation and intentional infliction of emotional distress and entered a judgment in favor of Fahs for $55 million, Chapnick for $25 million and Tagle for $15.3 million. Accordingly, on July 24, 2009, Marciano filed two Petitions of Mandate/Prohibition/Stay with the California Court of Appeal; both petitions were denied. On August 10, 2009, Marciano filed a Petition for a Writ of Supersedeas and a Request for Immediate Stay Pending Consideration of Petition for a Writ of Supersedeas; both were denied. On August 14, 2009, Marciano filed a Petition for Review with the California Supreme Court, which was denied.

### 2.    Payment of Debt As They Become Due

To be entitled to an order for relief, the Petitioning Creditors must show that Alleged Debtor is generally not paying his debts as they become due unless those debts are the subject of a bona fide dispute. 11 U.S.C. § 303(h).

The issue in Marciano involved whether Marciano was generally not paying his debts as they became due and whether his claims were subject to a bona dispute under 11 U.S.C. § 303 (b), (h). The Marciano Court quoted language from Liberty Tool & Mfg. v. Vortex Fishing Sys., Inc. (In Re Vortex Fishing Sys., Inc.) 277 F.3d 1057, 1072 (9th Cir. 2002) (quoting In re Bishop, Baldwin, Rewald, Dillingham & Wong, Inc., 779 F.2d 471, 475 (9th Cir. 1985) which stated that "The Ninth Circuit has adopted a 'totality of the circumstances' test for determining whether a debtor is generally not paying its debts under 11 U.S.C. § 303(h). "Merely establishing the existence of a few unpaid debts" is not sufficient." Semel v. Dill (In Re Dill), 731 F.2d 629, 632 (9th Cir. 1984). Also relevant is the passage of the Bankruptcy Commission Report:

> "The scope and meaning of "generally unable" and "generally failed" are left to the courts; it is not possible to lay down guidelines that will fit all cases. However, it is clear that the court must find more than prospective inability to pay only a few of the debtor's

liabilities when they fall due and more than a past failure to pay only a few of his debts. It is intended that the court consider both the number and amount in determining whether the inability or failure is general." B.D. Intern. Discount Corp. v. Chase Manhattan Bank, N.A. (In Re B.D. Intern. Discount Corp.), 701 F.2d 1071, 1075 (2d Cir. 1983), cert. denied, 464 U.S. 830, 104 S.Ct. 108, 78 L.Ed.2d 110 (1983) (quoting Bankruptcy Commission Report, Part 2 at 75).

Under these standards, the Court in Marciano utilized the totality of circumstances test to determine that Marciano was not paying his debt as they became due because the $260 million dollars judgment Marciano owed was substantial and Marciano had no plan to pay the judgment.

Unlike Marciano's substantial $260 million dollar judgment ("Marciano Judgments"), the judgment in the Family Law Matter was $708,258 (1/6 of the total unsecured debts as described above… whereas the Marciano Judgments represented a lion's share of all unsecured obligations), which is a mere fraction of the Marciano Judgments. Further, this amount is currently in dispute in the Pending Appellate Matter. The State Court in the Family Law Matter failed to take into account Alleged Debtor's evidence of income based on evidence sanctions entered against him. The State Court determined that Alleged Debtor's made $522,573 monthly based on expert testimony proffered only by Petitioner's experts. Alleged Debtor did not have the opportunity to cross-examine any of the Petitioner's Experts, who failed to take into account business expenses in calculating his income. The State Court essentially based child support obligations in the Family Law Matter on "fictitious" income.

Alleged Debtor's income is $3,000 monthly as opposed to the fabricated income of $522,573, which is substantially less than the amount the State Court determined. Unlike Marciano, the Alleged Debtor has at all times faithfully paid the maximum amount of child support to all Substantial Claim Holders and Petitioner based on his income, and has been paying his child support obligation based on **all** of his actual income, subject to a wage garnishment. Therefore, the Alleged Debtor has been paying his debts as they become due.

### 3. Bona Fide Dispute As To Liability or Amount

Since Marciano did not satisfy the third element under 11 U.S.C. § 303(b), (h), Marciano had to prove that his claims were subject to a bona fide dispute as to liability or amount. "The Court may not enter an order for relief against Marciano if the claims of the Petitioning Creditors

are "the subject of a bona despite as to liability of amount." 11 U.S.C. § 303(b)(1), (h)(1). "Establishing the existence or absence of a bona fide dispute involves a shifting the burden of proof. A petitioning creditor must establish a prima facie case that no bona fide dispute exists. Once this is done, the burden shifts to the debtors to present evidence demonstrating that a bona fide despite does exist." In re Biogenetic Technologies, Inc., 248 B.R. 852, 856 (Bankr.M.D.Fla.1999)(internal citations omitted).

In Platinum Financial Services Corp. v. Byrd (In Re Byrd), 357 F.3d 433, 438 (4th Cir. 2004), the court held that "existence of unstayed state court judgments in favor of petitioning creditor established prima facie case that no bona fide dispute existed with respect to related claims." Based on the reasoning of Byrd, the Marciano Defendants' Judgment established the prima facie case that there was no bona fide dispute and the burden shifted to Marciano to prove that a bona fide dispute existed.

The Court in Drexler established a per se rule holding that "a claim based upon an unstayed final judgment as to which an appeal has been taken by the debtor is not the subject of a bona fide dispute." In re Drexler, 56 B.R. 960, 967 (Bankr.S.D.N.Y. 1986). In the alternative, Byrd established that "it will be the unusual case in which a bona fide dispute exists in the face of claims reduced to state court judgments… such judgments do not guarantee the lack of a bona fide dispute." 357 F.3d at 438. It also held that "the purpose of the 'bona fide dispute' provision is to prevent creditors from using involuntary bankruptcy to 'coerce a debtor to satisfy a judgment even when a substantial question may concern the liability of the debtor.'" (quoting In Re Prisuta, 121 B.R. 474, 476 (Bankr.W.D.Pa.1990).

Since "bona fide dispute" was not defined, the Court in Marciano looked to the legislative history of § 303 for guidance. The legislative history added the language of "not contingent as to liability or the subject of a bona fide dispute as to liability or amount" to 11 U.S.C. § 303 to further "congressional intent that involuntary bankruptcy action should not be employed by litigants seeking to gain more leverage than they would have if they disputed contract performance in the proper judicial forum. The respondent in a bona fide dispute over

liability for a claim or the amount thereof should not be disadvantaged by the stigma and expense of an involuntary bankruptcy proceeding." 148 Cong.Rec S.11,728 (daily ed. Nov 20, 2002).

Although the Court looked at the legislative history, it found the holding in <u>Drexler</u> to be more applicable to the <u>Marciano</u> case. The Court wanted to protect the Petitioning Creditors from Marciano's "inappropriate dissipation of his assets." The Court also held that if it found a "claim based on a sanctions judgment is the subject of a bona dispute, [it] would reward the party whose conduct thwarted the policy of settling disputes on the merits." The Court goes on to state that "under California Law, a sanctions judgment is imposed only after the offending party disrupts the truth-seeking function of litigation by failing to comply with discovery obligations." <u>In Re Marciano</u>. The Court ultimately found that there was no bona fide dispute and the involuntary petition was proper based on the policies behind involuntary petition, which included but were not limited to equality of distribution among similarly situated creditors.

The <u>Marciano</u> case is distinguishable in many aspects. <u>Marciano</u> involved sanctions judgments based on his absolute disregard for the discovery process and numerous failed attempts by Defendants' counsel to conduct his deposition. Even when the Judge ordered Marciano to attend his own deposition, Marciano disregarded the Judge's order and did not show up based on his alleged "continuing health issue". Marciano engaged in conducts to deliberately obstruct the discovery process and thwarts the efforts of Defendants' counsel to depose him by changing his attorney at least fifteen different times.

Here, the Alleged Debtor has been cooperative in the discovery process and has had the same counsel since the Family Law Matter began. The only reason the Family Law Judge issued evidence sanctions against Alleged Debtor, which is currently on appeal, was due to Alleged Debtor's failure to testify based on privileged attorney client communication and documents that were not in Alleged Debtor's possession.

A bona fide dispute exists because due to the evidence sanctions against the Alleged Debtor, Alleged Debtor did not have the opportunity to present any evidence as to his income and financial situation. The Court erroneously determined Alleged Debtor's income was $522,573 monthly based on evidence Petitioner offered, which is in dispute. Alleged Debtor

makes a mere $3,000 monthly and his entire monthly child support obligation totals nearly $60,000 a month. Based on his current income, it is impossible to fulfill the current child support obligations. An Order To Show Cause To Modify The Child Support in State Court and an appeal in Appellate Court are currently pending and it is hopeful that the child support payment amounts will be resolved. Alleged Debtor's income was always subject to a wage garnishment and he continuously paid all of the child support obligations based on his current income.

Also awaiting on appeal is the attorneys' fees awarded in the Judgment. If the attorneys' fees award are reversed in the Pending Appellate Matter, two of the three claims that comprise the "three claims" requirement under 11 U.S.C. § 303 will not be met thus providing another reason to dismiss the Involuntary Petition.

The Marciano Court had no alternative but to dismiss Marciano's Motion to Dismiss because of his deliberate attempts to obstruct the discovery process and thwarting the efforts of Defendants' counsel to obtain his deposition. Not surprisingly, the Court did not want to reward Marciano's obstructive behavior and lack of regard for the discovery process and had no alternative but to reach the result it did in Marciano by not dismissing the involuntary petition against Marciano.

The Marciano Court also held the bankruptcy court was the proper forum for the Petitioning Creditors due to the policy behind involuntary petition which was to "protect the depletion of assets or to prevent the unequal treatment of similarly situated creditors." In Re Marciano. Unlike Marciano, who is a multi-millionaire, the Alleged Debtor has no assets – he does not own any real property, a car, or any other assets. Therefore, there is no concern for Alleged Debtor's "inappropriate dissipation" of his assets.

It is important for this Court to note that Marciano is a trial court order. As far as can be researched, Marciano has not gone to the BAP nor has it been certified by the Ninth Circuit. This leads one to the conclusion that Marciano is a ruling based on a very specific set of facts which simply do not exist in the instant case. So, although it is the most recent ruling on the 11 U.S.C. § 303 issue, it also carries little precedential value due to its extreme fact pattern.

Hence, this Court should dismiss the instant involuntary petition against Marciano based on Petitioning Creditors' failure to satisfy the elements under 11 U.S.C. § 303.

### C.    Abstention Under 11 U.S.C. § 305

Abstention is authorized under 11 U.S.C. § 305 which provides in pertinent part that the court may: "dismiss a case under this title or may suspend all proceedings in a case under this title, at any time if (1) interests of creditors and the debtors would be better served by such dismissal or suspension…."

In Re Rookery Bay, Ltd., 190 B.R. 949 (Bankr.M.D.Fla.1995) involves a case where Blazer Building, Inc. ("Blazer") filed an involuntary bankruptcy case against Rookery Bay, Ltd. ("Rookery").  Rookery denied among other things, that it had failed to pay debts as it became due and that its claim against Blazer was subject to a bona fide dispute. Rookery's denial was based in part by a judgment in favor of Blazer but a pending Notice of Appeal from the judgment that it filed shortly after the commencement of the involuntary bankruptcy ("Pending Action").

Rookery requested a suspension or dismissal of the Pending Action under 11 U.S.C. § 305(a)(1), contending that a dismissal or suspension would serve the best interests of all creditors and debtor based on the fact that Rookery's creditors agreed to defer collection of its debts that are owed to them.  In Re Rookery Bay, *supra*.

Rookery established that it had no assets to administer and that the dispute between Rookery and Blazer was essentially a two party dispute, which should be resolved in state court. The Court ultimately determined that the suspension of the proceedings did not substantially prejudice the petitioning creditor because Rookery's only asset was an apartment complex which had no equity.  Accordingly, the Court in Rookery suspended any further proceeding in the involuntary case, until the pending appeal was resolved, and decided that it would only reconsider Blazer's entry of the Order for Relief after the state court litigation was resolved.

Similar to Rookery, the Petitioning Creditors' claim arose out of a state court appeal, for which there is a Pending Appellate Matter.  In addition, the Substantial Claim Holders, which comprises a lions share majority of the total unsecured debt, approximately 5/6 of Alleged Debtor's debt, **have agreed to defer collection proceedings against the Alleged Debtor until**

**the Pending Appellate Matter was concluded**. See, Declaration of Yvonne Tran; Declaration of Gladys Bazan and Declaration of Gloria Lee. The <u>Rookery</u> court dismissed the involuntary petition because Rookery's creditors <u>agreed</u> to defer collection of its debts that are owed to them. The Substantial Claim Holders have agreed to defer collection as evidenced by the Declarations of the Yvonne Tran, Gladys Bazan and Gloria Lee.

<u>Rookery</u> involved a two party dispute, which is analogous to this case since the Petitioning Creditors' claims arose from the Family Law Matter, whereby Petitioner's claim is based on child support award and Behrndt and Farzad's claim arose out of the attorneys' fees award, which are on appeal in the Pending Appellate Matter. The issues in the Pending Appellate Matter involve complex family law issues and the family law courts are best equipped to settle matters arising out of family law and related issues. Two party disputes are best handled outside of bankruptcy. Reduced to its essence, this case is a two-party dispute. (Being only a two-party dispute, the debt should be modified outside of the bankruptcy process. See, <u>In re Tucson Properties Corp.</u>, 193 B.R. 292, 301 (Bankr. D. Ariz. 1995) citing *In re Landmark Capital,* 27 B.R. 273 (Bankr.D.Ariz.1983))

Akin to <u>Rookery</u>, Alleged Debtor has no assets to administer. Hence, there is no prejudice to the Petitioning Creditors while the instant involuntary petition is stayed until the final outcome of the Pending Appellate Matter.

Based on the forgoing, there is substantial support for this Court to suspend or dismiss proceedings in the instant involuntary petition pending the outcome of the Pending Appellate Matter.

///
///
///

**III.    CONCLUSION**

Accordingly, this Court should dismiss the instant involuntary petition against Alleged Debtor because Petitioning Creditors cannot satisfy the elements under 11 U.S.C. § 303 and should suspend and/or dismiss the involuntary petition based on abstention pursuant to 11 U.S.C. § 305.

DATE:  March 28, 2011

       /s/ Gerald Wolfe
GERALD WOLFE
Attorney for Alleged Debtor
Steven Sears

# **DECLARATION OF STEVEN SEARS**

I, STEVEN SEARS, hereby declare as follows:

1. I have personal knowledge of the facts set forth in this declaration and could and would competently testify thereto.

2. This declaration is made in support of the Motion to Dismiss the Involuntary Chapter 11 Bankruptcy Petition.

3. I am the Defendant and Respondent in a certain family law matter in the Orange County Superior Court ("State Court") entitled *Nevine Carmelle v. Steven Sears*, Case No. 06P000642 ("Family Law Action").

4. The State Court issued a Statement of Decision on October 11, 2008, a copy of which is attached as Exhibit "1".

5. On March 5, 2010, the State Court issued a Judgment in the Family Law Action ("Judgment"), a copy of which is attached as Exhibit "2".

6. On March 15, 2010, I filed a Motion for New Trial, a copy of which is attached as Exhibit "3".

7. On August 20, 2010, I filed a Notice of Filing of Notice of Appeal entitled *Nevine Carmelle v. Steven Sears*, Case No. G044104 in the Court of Appeal, Fourth Appellate Court, a copy of which is attached as Exhibit "4".

I declare under the penalty of perjury under the laws of the State of California that the foregoing is true and correct Dated on the 28th day of March in Irvine, California.

> /s/ Steven Sears
> Steven Sears, Declarant

MOTION TO DISMISS INVOLUNTARY CHAPTER 11 BANKRUPTCY PETITION -16-

MOTION TO DISMISS INVOLUNTARY CHAPTER 11 BANKRUPTCY PETITION -17-